CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

12/28/2018

JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ANDREW H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 6:17-cv-61 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Andrew H. ("Andrew") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Andrew alleges that the Administrative Law Judge ("ALJ") erred because: (1) he improperly evaluated Andrew's mental impairments under SSR 96-8p in making his mental RFC determination; and (2) substantial evidence does not support the ALJ's assessment of Andrew's subjective allegations.

I conclude that the ALJ failed to adequately explain the basis for Andrew's mental RFC. Accordingly, I **RECOMMEND GRANTING** Andrew's Motion for Summary Judgment (Dkt. 14), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 16), and **REMANDING** the case for further consideration by the ALJ.

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

## **STANDARD OF REVIEW**

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Andrew failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the Court of Appeals remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636; Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

here because the ALJs opinion leaves the court to guess at how he reached his conclusions regarding Andrew's mental RFC.

## CLAIM HISTORY

Andrew filed for SSI on February 18, 2014, claiming that his disability due to Asperger's syndrome, ADHD, depression, Type 2 diabetes, obesity, and irregular sleep cycles began on January 1, 1994. R. 57–58. Andrew was 25 years old when he applied for SSI, and was 6 years old on his alleged onset date. R. 57. The state agency denied Andrew's applications at the initial and reconsideration levels of administrative review. R. 57–84. On February 11, 2016, ALJ Brian P. Kilbane held a hearing to consider Andrew's claim for SSI. R. 33–55. Counsel represented Andrew at the hearing, which included testimony from vocational expert Gerald Wells. R. 33. On March 2, 2016, the ALJ entered his decision analyzing Andrew's claims under the familiar five-step process[3] and denying his claim for benefits. R. 11–21.

The ALJ found that Andrew had not engaged in substantial gainful activity since February 18, 2014, the application date. R. 13. The ALJ determined that Andrew suffered from the severe impairments of obesity, diabetes, personality disorder, autistic disorder, attention deficit disorder, oppositional defiant disorder, and obsessive-compulsive disorder. R. 13–14. The ALJ determined that these impairments, either individually or in combination, did not meet or

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

medically equal a listed impairment. R. 14–15. The ALJ found that Andrew's mental disorders did not meet listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.10 (autism spectrum disorder). R. 14. He also considered the "paragraph B" criteria and determined that they were not satisfied. R. 14–15. The ALJ likewise considered the "paragraph C" criteria and determined that they were also not satisfied. R. 15. The ALJ found that Andrew had mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. R. 14.

The ALJ concluded that Andrew retained the residual functional capacity ("RFC") to perform light work, except he should avoid concentrated exposure to hazards. Id. The ALJ specifically found that Andrew retains the ability to perform simple unskilled work on a sustained basis in a competitive work environment where there is no more than occasional interaction with coworkers and the general public. Id. Finally, he can maintain concentration, persistence and pace for two-hour periods of time in order to complete a normal eight-hour workday. Id.

Andrew had no past relevant work, but based on Andrew's age, education, work experience, and RFC, the ALJ determined that Andrew could perform jobs that exist in significant numbers in the national economy, such as cleaner, sorter/folder, and office helper. R. 19–20. Thus, the ALJ concluded that Andrew was not disabled. R. 20. Andrew appealed the ALJ's decision and the Appeals Council denied his request for review on June 14, 2017. R. 1–5.

## ANALYSIS

Andrew alleges that the ALJ erred because: (1) he improperly evaluated Andrew's mental

4

impairments under SSR 96-8p in making his mental RFC determination; and (2) substantial evidence does not support the ALJ's assessment of Andrew's subjective allegations.

### A. Medical History

1. <u>Physical Impairments</u>

In his initial disability report, Andrew claimed disability based on the physical conditions of diabetes mellitus type 2, obesity, and irregular sleep cycles, with an alleged onset date of January 1, 1994. R. 57–58. Andrew testified at the hearing that his diabetes is not under control. R. 46–47. Medical records show that Andrew's diabetes treatment began as early as March 2012 and continued through the end of 2015. R. 354. Andrew's primary care doctor, James Cure, M.D., along with other doctors and staff at Lynchburg Internal Medicine, repeatedly recommended to Andrew that he needed to follow a reasonable diet and exercise routine, abide by his medication regimen, and regularly check his blood sugar levels, but he demonstrated much difficulty complying with treatment recommendations. 350, 355, 677, 681, 687, 701–02, 735, 761, 770. Dr. Cure noted that "[g]etting [Andrew] to do anything consistently is difficult[] with his Asperger's." R. 687.

2. <u>Mental Impairments</u>

In his initial disability report, Andrew claimed disability based on the mental conditions of ADHD, Asperger's syndrome, and depression. R. 57–58. Andrew's school referred him for psychological evaluations in December 2003 and August 2005. R. 330–41. In the 2005 evaluation, the psychologist reported diagnosis of Asperger's syndrome, and testing revealed symptoms consistent with attention deficit disorder (ADD). R. 336, 339. Andrew's primary care doctor diagnosed Asperger's syndrome as early as September 2012 and noted that it regularly

interfered with Andrew's compliance with his diabetes management regimen. 344, 351–53, 681, 687, 701, 728, 731.

Medical records from Piedmont Psychiatric Center, beginning as early as September 2011 and continuing through the end of 2015, demonstrate a protracted psychological treatment and evaluation history. R. 378. Upon psychiatric evaluation for medication management in February 2013, Dr. John Wilson diagnosed Andrew with pervasive developmental disorder and obsessive-compulsive disorder (OCD), and found that he had possible impulse control disorder and suspected tardive dyskinesia (a side effect of certain medications used to treat mental conditions). R. 376–77. Dr. Wilson stated that Andrew: was reactive to his parents and displayed occasional anger; had difficulty with social situations and adapting to change; and satisfied "full autistic spectrum criteria." Id. Over time, doctors at Piedmont Psychiatric (including Dr. Wilson, Dr. Ken Fore, Dr. Michael Judd, and Dr. Moni Baidya) evaluated Andrew for pervasive developmental disorder (R. 372, 374, 377, 378, 710, 746, 756), autistic continuum (R. 670, 672, 710, 740, 747), OCD (R. 374, 377, 378, 710, 746, 756), possible issues with impulse control (R. 372, 374, 377, 756), and suspected tardive diskynesia (R. 377, 710, 746, 756). Dr. Baidya explicitly did not evaluate Andrew for disability benefits, nor did any other doctor at Piedmont Psychiatric. R. 771–72.

At the administrative hearing, both Andrew and his mother, Cathy, testified. Cathy testified that Andrew lives in a townhome, which is paid for by his parents. R. 36. She regularly goes to Andrew's home to clean, cook, give him injections, and to make sure he takes his medications by putting pills in a pillbox. R. 37. She demonstrated concern about how Andrew is easily distracted, and mentioned as an example that she does not think Andrew would be able to

6

take his medications properly. R. 38. She described Andrew as being unable to read social cues, accept criticism, or to control his anger or impulses. R. 39–40.

Andrew testified that he dropped out of school because of his Asperger's, as he had trouble staying awake in class, completing his homework, and managing stress. R. 40–41. He also described himself as easily distracted. R. 43. In a typical day, Andrew "mostly loung[es] around," builds model kits, and plays video games. R. 45. Andrew explained that it is difficult for him to change his daily habits. R. 47. He does not go out in public often, does not drive, and has never worked. R. 48–50.

    3.   Medical Opinion Evidence

In May 2013, Deborah A. Bremer, Psy.D., completed a consultative examination for the state agency. R. 364. Dr. Bremer described Andrew as "quite immature" with an awkward gait. Id. His grooming and hygiene were poor, and his speech was normal, although he spoke in an awkward manner. R. 367. She described Andrew's living situation (alone in a townhome that his parents pay for), but noted his parents come over daily to make sure he takes his medications, cook for him, and take him grocery shopping. R. 366. His parents also pay him to clean his own house. Id. Dr. Bremer determined that Andrew does not meet the criteria for Asperger's syndrome, ADHD, OCD, or oppositional defiant disorder. R. 365, 367. Instead, she stated that Andrew has a personality disorder. R. 368. Dr. Bremer concluded that Andrew's personality disorder "substantially interferes with his ability to interact appropriately and successfully in the workplace." R. 370. She noted that "[t]here really is no reason why he could not work except that he does not want to." Id.

In June 2014, as part of the state agency's initial disability determination, Richard

Surrusco, M.D., reviewed the record and determined that Andrew's medically determinable impairments included obesity, diabetes mellitus, hyperlipidemia, hypertension, other disorders of the nervous system, personality disorders, and autistic disorders. R. 62–63. As part of Andrew's physical RFC evaluation, Dr. Surrusco determined that Andrew can occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; stand or walk and sit for about six hours in any eight-hour workday; and push and pull without limitation. R. 65. He found that Andrew had no postural, manipulative, visual, communicative, or environmental limitations. Id. Dr. Surrusco concluded that Andrew is capable of light work. Id.

Richard J. Milan, Jr., Ph.D., completed a psychiatric evaluation for Andrew's initial disability determination. He found that Andrew has mild restriction in activities of daily living; moderate difficulties in maintaining social functions; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. R. 63. As part of Andrew's mental RFC evaluation, Dr. Milan determined that Andrew has no memory limitations but sustained concentration and persistence limitations. Specifically, Andrew is not significantly limited in his abilities to carry out very short and simple instructions, to carry out detailed instructions, and to make simple work-related decisions. R. 66. He is moderately limited in his abilities to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. Id. Dr. Milan explained that Andrew would be

8

able to maintain concentration and attention for two-hour periods during an eight-hour day; maintain attendance and punctuality with only one to two problems per month; interact appropriately with supervisors and coworkers to complete required tasks but would be less comfortable in situations requiring frequent social interaction; and would be able to complete a normal work week and perform at a pace generally consistent with others. Id. In terms of social limitations, Dr. Milan found that Andrew is moderately limited in his abilities to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. R. 66–67. Dr. Milan stated he could interact with the public on an infrequent basis only; would be easily distracted by others and need additional time to accept criticism; and would be able to maintain acceptable behaviors and hygiene except on an infrequent basis. R. 67. Dr. Milan found no adaptation limitations. Id. Finally, Dr. Milan found Andrew was not significantly limited in ability to ask simple questions or request assistance. R. 66.

As part of Andrew's request for reconsideration of the state agency's disability determination, Dr. Carolina Bacani-Longa, M.D., evaluated the records in October 2014. She found the same medically determinable impairments as Dr. Surrusco, with the addition of ADD/ADHD and ODD (oppositional/defiant disorders). R. 77–78. Her physical RFC determination was identical to Dr. Surrusco's with the addition of an environmental limitation, namely, avoiding concentrated exposure to hazards. R. 80–81. Dr. Bacani-Longa concurred that Andrew is capable of performing light work. R. 83.

9

During that same reconsideration, Sandra Francis, Psy.D., evaluated Andrew's record. Dr. Francis found identical limitations to Dr. Milan, with the addition of one adaptation limitation, namely, Andrew is moderately limited in his ability to respond appropriately to change in the work setting. R. 78.

### B. ALJ's Evaluation of Andrew's Mental Impairments

The ALJ concluded at step 3 that Andrew suffers moderate limitations in social functioning and concentration, persistence and pace. Andrew argues that the ALJ failed to properly consider Andrew's moderate limitations in these areas when developing his mental RFC. Pl.'s Br. at 8 (Dkt. 15). Specifically, Andrew contends that the ALJ failed to adequately explain how simple unskilled work addresses Andrew's moderate limitations on his concentration, persistence and pace, and how occasional interaction with coworkers and the general public addresses Andrew's moderate limitations in social interaction. Id. at 12. The Commissioner counters that substantial evidence establishes that the RFC accounts for both of Andrew's moderate mental functional limitations. Def.'s Br. at 9 (Dkt. 17).

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7 (1996); Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)

10

(emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Further, in Mascio v. Colvin, the Fourth Circuit clarified the ALJ's duty of explanation to adequately review the evidence and explain the disability decision. 780 F.3d 632, 636 (4th Cir. 2015). The ALJ has the responsibility to address the evidence of record that supports his conclusions, and ensure that any hypothetical questions presented to the vocational expert includes all of the limitations set forth in the RFC. See Panna v. Colvin, No. 1:15cv229, 2015 WL 5714403, at *3 (W.D.N.C. Aug. 31, 2015) (remanding because "the ALJ failed to address [the claimant's] limitations in social functioning or explain why these limitations in social functioning did not translate to work related limitations in Plaintiff's RFC" like what is required by Mascio in concentration, persistence or pace cases); see also Fauber v. Colvin, No. 6:15-CV-16, 2016 WL 8736904, at *5 (W.D. Va. Aug. 12, 2016) (applying Mascio to a plaintiff's claim that the ALJ failed to account for his moderate limitations in social functioning in the RFC).

Here, the ALJ's decision-making process with regard to Andrew's concentration, persistence and pace and social functioning limitations is not clear. The ALJ found that Andrew had moderate limitations with concentration, persistence or pace at step three of his decision. He likewise found that Andrew had moderate difficulties with social functioning. In step four, the ALJ provided an overview of some of the medical evidence and Andrew's subjective reports, but he failed to connect his mental RFC findings to specific medical evidence, and, in fact, contradicted himself in some instances.

11

1. <u>Concentration, Persistence or Pace</u>

The ALJ stated that Andrew's "mental status has generally been normal" and that "[t]here is no evidence of any concentration impairment." R. 18. However, the ALJ noted that Andrew has a history of ADD diagnoses. R. 17. He also discussed only select records pertaining to Andrew's psychiatric treatment history without any explanation as to why he relied on some treating sources from Piedmont Psychiatric but not others. For example, the ALJ failed to discuss records from Drs. Wilson or Judd, who both evaluated Andrew several times at the Piedmont Psychiatric Center. At least some of the records that the ALJ failed to discuss contained diagnoses that appear to be relevant to a determination regarding concentration. Additionally, in one instance in which he did discuss psychiatric records, the ALJ excluded some seemingly relevant diagnoses from that specific evaluation. <u>See</u> R. 18, 710.

Furthermore, if the ALJ determined that there was no evidence in Andrew's treatment records of any concentration impairment, it is hard to reconcile why he imposed a moderate limitation on concentration, persistence and pace (especially in light of the fact that the ALJ did not discuss persistence or pace at all). The state agency consultants found that Andrew had moderate limitations regarding concentration, persistence and pace. Yet even though the ALJ stated that he gave "great weight" to the assessments of the state agency consultants (R. 19), he still reached the conclusion that there was no evidence of any concentration impairments. The ALJ did illustrate how he reached his conclusion regarding Andrew's credibility and stated that the treatment records did not support Andrew's allegations regarding the severity of his limitations. But, this assessment does not suffice as a "logical bridge" because the ALJ failed to discuss Andrew's relevant treatment records. Therefore, I am unable to evaluate how the ALJ

12

found five different severe psychiatric impairments and an RFC with multiple moderate limitations. The ALJ's incomplete assessments of the objective medical evidence and Andrew's credibility fail to build an accurate and logical bridge from the medical evidence to his mental RFC determination.

    2. <u>Social Limitations</u>

The ALJ stated, "No treating or examining medical source has opined that the claimant is more limited than the above residual functional capacity." R. 19. Contrary to this assertion, the state agency's social interaction limitations seem more restrictive than the ALJ's RFC determination. The agency stated that the claimant could interact with the public "on an infrequent basis only," and, because Andrew would be easily distracted and need additional time to accept criticism, he would best work in a setting with "only a few co-workers." R. 82. The ALJ does not explain how or why the limitation in the RFC of occasional interaction with the general public and coworkers adequately accommodates those social functioning impairments. This is especially true where, again, the ALJ gave great weight to the state agency assessments. Contrary to his assertion, the ALJ did not show how his RFC assessment "reflects the degree of limitation [he] found in the . . . mental function analysis." R. 15.

Although the ALJ may very well conclude again that Andrew is not disabled, the ALJ has a duty of explanation. He must at least provide a sufficient explanation in the decision to allow this Court to conduct a meaningful review of the RFC determination. See <u>Panna v. Colvin</u>, No. 1:14cv229, 2015 WL 5714403, at *3 (W.D.N.C. Aug. 31, 2015). The ALJ meets this duty when the ALJ provides "a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which 'build[s] an

13

accurate and logical bridge from the evidence to [its] conclusion.'" Neville v. Berryhill, No. 6:16-CV-6, 2017 WL 3909735, at *4 (W.D. Va. Aug. 22, 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). The failure to make this connection means "the analysis is incomplete and precludes meaningful review." Monroe, 826 F.3d at 190. Here, the ALJ failed to construct a logical bridge connecting the record with the limitations he crafted in Andrew's mental RFC. Because I cannot meaningfully review the ALJ's mental RFC determination without such a connection, remand is warranted.[4]

## CONCLUSION

It is not the province of the Court to make a disability determination. The Court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence. In this case, the ALJ failed to satisfy his duty of explanation, and meaningful judicial review is impossible. For the foregoing reasons, I recommend **GRANTING** Andrew's Motion for Summary Judgment, **DENYING** the Commissioner's Motion for Summary Judgment, and **REMANDING** this matter for additional consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file

---

[4] Andrew asserts an additional ground for remand in his motion for summary judgment, namely, that the ALJ did not properly assess his subjective allegations. Upon remand, the ALJ should also consider that issue when determining Andrew's RFC.

specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                Entered:  December 28, 2018

                *Robert S. Ballou*

                Robert S. Ballou
                United States Magistrate Judge